United States District Court
Southern District of Texas

**ENTERED**

October 19, 2023

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:23−mj−02017 *SEALED* |
| | § | |
| Juan Ramon Molina Rodriguez | § | |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the **Florida Southern District Court, Miami division, in 23−MJ−4021.**

The defendant requested court appointed counsel. Federal Public Defender appointed.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date: October 19, 2023

Christina A. Bryan
United States Magistrate Judge

Government moved for detention and Defendant detained pending a hearing in District of offense.

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  23-mj-04021-Sanchez |
| | ) | |
| JUAN RAMON MOLINA RODRIGUEZ, | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Juan Ramon Molina Rodriguez
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☑ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Commit Money Laundering in violation of Title 18, United States Code, Section 1956(h).

Date:   October 18, 2023

_____
*Issuing officer's signature*

City and state:     Miami, Florida

Honorable Eduardo I. Sanchez, United States Magistrate Judge
*Printed name and title*

| Return |
| --- |
| This warrant was received on *(date)*  10/18/23   , and the person was arrested on *(date)*   10/18/23 at *(city and state)*   Houston, TX   . |
| Date:   10/19/23         _____ *Arresting officer's signature*  SCOTT M McNEA / SPECIAL AGENT  *Printed name and title* |

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States District Court
Southern District of Texas

**ENTERED**

October 19, 2023

Nathan Ochsner, Clerk

UNITED STATES OF AMERICA § 
 §
*versus* § Case No. 4:23–mj–02017 *SEALED*
 §
Juan Ramon Molina Rodriguez § 

## ORDER APPOINTING COUNSEL FOR LIMITED PURPOSE

    Because the Defendant, Juan Ramon Molina Rodriguez, has satisfied this court that (s)he is financially unable to employ counsel for initial appearance only and does not wish to waive counsel, and because the interests of justice so require, an attorney is hereby **APPOINTED** to represent Defendant in the above designated case for the **limited purpose of any hearing conducted in Houston, Texas**, and shall have no effect once the Defendant is transferred to the original court in the Florida Southern District Court, Miami Division. Once transferred, the original court must make a new determination on whether the Defendant satisfies the requirements for appointed counsel based on the information available to the court at that time.

### Attorney appointed: Federal Public Defender

    The appointment **SHALL** remain in effect until Defendant is transferred to the original jurisdiction and this case is terminated in the Southern District of Texas.

    Signed on October 19, 2023.

Christina A. Bryan
United States Magistrate Judge

24

United States District Court
Southern District of Texas

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**

October 19, 2023

Nathan Ochsner, Clerk

UNITED STATES OF AMERICA          §
                                  §
*versus*                          §          Case No. 4:23–mj–02017 *SEALED*
                                  §
Juan Ramon Molina Rodriguez       §

**ORDER**

In accordance with Federal Rule of Criminal Procedure 5(f), as amended by the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the Government is **ORDERED** to comply with the prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Government is also notified of the potential consequences of violating this Order and the disclosure obligations. The consequences include, but are not limited to, sanctions such as delaying trial or other proceedings, excluding evidence, giving adverse jury instructions, granting a new trial, dismissing the case, or finding the Government in contempt.

It is so **ORDERED**.

**SIGNED** on October 19, 2023.

Christina A. Bryan
United States Magistrate Judge

25

United States Courts
Southern District of Texas
FILED

*October 19, 2023*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**4:23-mj-2017**

CASE NO.  23-mj-04021-Sanchez

FILED BY_____ *dgi* ___D.C.

*Oct 18, 2023*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIA

IN RE SEALED COMPLAINT

_____/

<u>CRIMINAL COVER SHEET</u>

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?  <u>No.</u>

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  <u>No.</u>

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  <u>No.</u>

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:     */s/ Eli S. Rubin*
Eli S. Rubin
Assistant United States Attorney
Court ID No. A5503535
99 N.E. 4th Street
Miami, Florida 33132
(305) 961-9247
Email: Eli.Rubin@usdoj.gov

4

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

United States of America )
v. )
)  Case No.  23-mj-04021-Sanchez
)
JUAN RAMON MOLINA RODRIGUEZ, )
)

*Defendant(s)*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   March 2015 and continuing until in or about November 2019,  in the county of _____ Miami-Dade _____ in the

____ Southern ____ District of ____ Florida ____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Scott McNeil, Special Agent HSI
*Printed name and title*
(No. 2976)

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  Face Time

Date:   October 18, 2023

_____
*Judge's signature*

City and state: _____ Miami, Florida _____     Hon. Eduardo I. Sanchez, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Scott McNeil, being duly sworn, depose and state as follows:

### AGENT BACKGROUND AND INTRODUCTION

1.      I have been a Special Agent with Homeland Security Investigations ("HSI") for approximately one year. Previously I was a Special Agent with the United States Secret Service ("USSS") for approximately eight years and a Special Agent with the United States Attorney's Office – Southern District of New York ("USAO-SDNY") for approximately four years. As a Special Agent with HSI, USSS and USAO-SDNY, my duties have included conducting complex criminal investigations involving cyber-crimes and financial fraud offenses. I am the case agent with primary responsibility for this investigation and have been personally involved in this investigation. I have participated in multiple investigations throughout my career and have sworn out multiple criminal complaints. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1).

2.      I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of text messages, recordings, email communications, bank records, other documents, and conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise. Quotations of messages in Spanish are based on draft translations.

6

3.      I have participated in a criminal investigation concerning **JUAN RAMON MOLINA RODRIGUEZ**, a Honduran citizen who was a Honduran government official during the bribery and money laundering scheme described herein.  Based on the evidence gathered through this investigation, there is probable cause to believe that from in or around March 2015, through in or around November 2019, **JUAN RAMON MOLINA RODRIGUEZ**, in violation of Title 18, United States Code, Section 1956(h), did knowingly and willfully combine, conspire, confederate, and agree with Foreign Official 1 and Intermediary 1 (who are described below), and others to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place outside of the United States to and through a place in the United States, and from a place in the United States to and through a place outside of the United States with the intent to promote the carrying on of one or more specified unlawful activities, namely: (i) a felony violation of the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2, pursuant to Title 18, United States Code, Section 1956(c)(7)(D); and (ii) an offense against a foreign nation involving bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, in violation of the Criminal Code of Honduras, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv).

### THE U.S. FOREIGN CORRUPT PRACTICES ACT (FCPA)

4.      Your affiant is aware that the FCPA was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of influencing a foreign official, inducing a foreign official to take or omit to take

7

certain acts, and securing an improper advantage in order to obtain or retain business for or with, or direct business to any, person. 15 U.S.C. § 78dd-1, *et seq.*

     5.     The FCPA prohibits "domestic concerns"—which include (A) any individual who is a citizen, national, or resident of the United States and (B) companies that are incorporated in the United States or have their principal place of business in the United States—or any officer, director, employee or agent of such domestic concern or stockholder acting on behalf of such domestic concern, from making use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value, to a foreign official or to a person, while knowing that all or part of such money or thing of value would be and had been offered, given, or promised to a foreign official, for purposes of (i) influencing acts or decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do or omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government or agencies or instrumentalities thereof to affect or influence acts or decisions of such government or agencies or instrumentalities, in order to assist the domestic concern to obtain or retain business for or with, or direct business to, any person. 15 U.S.C. §§ 78dd-2(a) and (h)(1).

### THE CRIMINAL CODE OF HONDURAS
### RELATING TO BRIBERY OF A PUBLIC OFFICIAL AND PUBLIC SERVANT

     6.     Based on my review of an English translation of the Criminal Code of Honduras, the following provisions relate to bribery of public officials and public servants:

     a.     Article 361 - Any public official or public servant who seeks, receives, or accepts, either personally or through a third party, a thing of value, gift, offer, promise, or any

other undue advantage, in exchange for performing an act in violation of his or her duties that constitutes a crime, will be punished[.]

        b.    Article 362 - Any public official who seeks, receives, or accepts, either directly or indirectly, things of value, gifts, offers, promises, or any other undue advantage, in exchange for performing an unjust act that is related to his or her office and that does not constitute a crime, will be punished[.]

        c.    Article 365 - Any public official or public servant who accepts a gift or benefit of any kind from a party to a matter being considered by that public official or public servant will be punished[.]

## RELEVANT ENTITIES AND INDIVIDUALS

7.    Comité Técnico del Fideicomiso para la Administración del Fondo de Protección y Seguridad Poblacional ("TASA") was a Honduran governmental agency responsible for, among other things, procuring uniforms and other goods for the Honduran National Police. TASA was controlled by the government of Honduras, performed a function that the government of Honduras treated as its own, and was a "department, agency, and instrumentality" of the Honduran government as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

8.    During the relevant period, **JUAN RAMON MOLINA RODRIGUEZ** was a citizen of Honduras and a Titular Director at TASA who oversaw the work of Foreign Official 1, a former senior official at TASA. **JUAN RAMON MOLINA RODRIGUEZ** was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

9.      "Offshore Front Company 1," an entity whose identity is known to the affiant, was a front company incorporated outside the United States. **JUAN RAMON MOLINA RODRIGUEZ** used a bank account ending in 1951 in the name of Offshore Front Company 1 at a bank in Belize ("Belize Bank 1," an entity whose identity is known to the affiant) ("Offshore Front Company 1 Account 1951") to receive bribe payments from an account controlled by Intermediary 1.

10.     "Foreign Official 1," an individual whose identity is known to the affiant, was a citizen of Honduras and a senior official at TASA.  Foreign Official 1 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).  Foreign Official 1 controlled multiple companies and accounts in Central America and the United States that were used to receive and conceal bribe payments.

11.     "Offshore Front Company 2," an entity whose identity is known to the affiant, was a front company controlled by Foreign Official 1.  Offshore Front Company 2 was incorporated in Belize in 2016 and had an address in Belize City, Belize.  Foreign Official 1 used a bank account at Belize Bank 1 in the name of Offshore Front Company 2 ending in 2941 (the "Offshore Front Company 2 Account 2941"), to receive at least one bribe payment from Intermediary 1.

12.     "Georgia Company 1," an entity whose identity is known to the affiant, was a limited liability company headquartered in Marietta, Georgia.  Georgia Company 1 owned and operated a factory in Honduras that manufactured law enforcement uniforms.  Georgia Company 1 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B).

13.     "Executive 1," an individual whose identity is known to the affiant, was a citizen of the United States and a senior executive of Georgia Company 1.  Executive 1 was a "domestic

5

concern," an "officer, director, employee, and agent" of a "domestic concern," and a "stockholder" acting on behalf of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

14.     "Executive 2," an individual whose identity is known to the affiant, was a citizen of the United States and a senior executive of Georgia Company 1.  Executive 2 was a "domestic concern," an "officer, director, employee, and agent" of a "domestic concern," and a "stockholder" acting on behalf of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

15.     "Executive 3," an individual whose identity is known to the affiant, was a dual citizen of the United States and Bolivia and a senior executive at Georgia Company 1.  Executive 3 was a close relative of Employee 1 and related by marriage to Intermediary 1.  Executive 3 was a "domestic concern" and an "employee" and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

16.     "Employee 1," an individual whose identity is known to the affiant, was a dual citizen of the United States and Bolivia and a resident of Broward County in the Southern District of Florida.[1]  Employee 1 was a close relative of Executive 3.  Employee 1, during part of the duration of the scheme, was an "employee" and "agent" of Georgia Company 1.  Employee 1 was a "domestic concern" and an "employee" and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

---

[1] Between approximately 2019 and 2021, Executive 3 and Employee 1 engaged in a bribery and money laundering scheme to secure a Bolivian government contract worth approximately $5.6 million.  Executive 3 and Employee 1 pleaded guilty for their roles in that bribery and money laundering scheme and have been cooperating with law enforcement since shortly after each of their arrests.  Executive 3 and Employee 1 received reduced sentences pursuant to Federal Rule of Criminal Procedure 35(b) based on their substantial assistance to law enforcement.  The information provided by Executive 3 and Employee 1 has been corroborated by other evidence learned during the investigation.

17. "Intermediary 1," an individual whose identity is known to the affiant, was a dual citizen of the United States and Peru and a resident of Palm Beach County in the Southern District of Florida. Intermediary 1 was a "domestic concern" and an "director, employee and agent" of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

18. Intermediary 1 controlled a series of entities incorporated in Florida with listed addresses in the Southern District of Florida, including "Intermediary Company 1," the identity of which is known to the affiant, which was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B).

## OVERVIEW OF THE SCHEME TO LAUNDER BRIBERY PROCEEDS

19. Beginning in or around March 2015 and continuing until in or about November 2019, Executive 1, Executive 2, Executive 3, Employee 1, and Intermediary 1, together with others, agreed to pay, and did pay, bribes to Honduran government officials, including **JUAN RAMON MOLINA RODRIGUEZ** and Foreign Official 1, in violation of U.S. and Honduran law, including the FCPA. In exchange for the bribes, **JUAN RAMON MOLINA RODRIGUEZ**, Foreign Official 1, and other Honduran government officials assisted Georgia Company 1 in obtaining contracts with, and securing payment from, TASA. The contracts were worth over approximately $10 million and for the sale of uniforms and accessories for the Honduran National Police. Executive 1, Executive 2, Executive 3, Employee 1, and Intermediary 1 used the proceeds from the contracts awarded by TASA to Georgia Company 1 to make the bribe payments.

20. In or around September 2015, while the scheme was underway, Executive 1, Executive 3, and others recruited Intermediary 1 into the conspiracy to assist with laundering the bribe payments. Executive 1, Intermediary 1, and others created sham contracts and fraudulent

invoices to conceal the scheme and launder over approximately $2 million in contract proceeds through Intermediary 1. Intermediary 1 and his co-conspirators used the funds received pursuant to the sham contracts and fraudulent invoices to make bribe payments to **JUAN RAMON MOLINA RODRIGUEZ**, Foreign Official 1, and other Honduran government officials.

21.     To launder the bribe payments, Executive 1, Executive 2, Executive 3, Employee 1, Intermediary 1, **JUAN RAMON MOLINA RODRIGUEZ,** Foreign Official 1, and others agreed to (i) send money from the Central Bank of Honduras in Honduras through and to bank accounts in the United States, including accounts located in the Southern District of Florida; and (ii) send money from bank accounts in the Southern District of Florida through and to bank accounts outside the United States, including in Belize.

22.     As described in greater detail below, **JUAN RAMON MOLINA RODRIGUEZ** received bribes totaling at least approximately $114,000, in exchange for using his official position to assist Georgia Company 1 to obtain and retain business for Georgia Company 1.

23.     Bank and corporate records from the United States and Belize show wire transfers from an account controlled by Intermediary 1 in the United States to an account in the name of Offshore Front Company 1 in Belize, which was controlled by **JUAN RAMON MOLINA RODRIGUEZ**. The transfers occurred soon after Intermediary 1 received contract proceeds from Georgia Company 1. Lastly, **JUAN RAMON MOLINA RODRIGUEZ's** co-conspirators who paid his bribes were recorded during a conversation in late 2019 discussing the bribery and laundering scheme and a then recent conversation between Executive 3, Foreign Official 1, and "Juan Ramon" about the scheme.

## THE FIRST UNIFORM CONTRACT

24.     Beginning in or around March 2015, Executive 1, Executive 2, Executive 3, Employee 1, and others sought to win a contract from TASA worth approximately $4.8 million for Georgia Company 1 to sell uniforms and accessories to TASA for the Honduran National Police.

25.     On or about April 28, 2015, Employee 1, Executive 2, and others traveled from the United States to Tegucigalpa, Honduras, to meet with representatives of the Honduran National Police regarding Georgia Company 1's bid to sell uniforms and accessories to TASA for the Honduran National Police.

26.     On or about June 25, 2015, Executive 2, on behalf of Georgia Company 1, executed a contract with TASA whereby Georgia Company 1 agreed to provide the Honduran National Police with uniforms and accessories in return for approximately $4.8 million (the "First Uniform Contract"). **JUAN RAMON MOLINA RODRIGUEZ**, as a legal representative of TASA, signed the First Uniform Contract on behalf of TASA.

27.     Executive 3 told law enforcement that Executive 1 and Executive 2 needed a financier to transfer approximately 20 percent of the contract's proceeds to government officials as a kickback. According to Executive 3 and information produced by Georgia Company 1, on or about September 8, 2015, Executive 1 met with Executive 3 and Intermediary 1 at Intermediary Company 1's office in Miami, Florida, in the Southern District of Florida, to discuss laundering the proceeds of the First Uniform Contract as bribe payments to Honduran government officials.

28.     On or about October 6, 2015, Executive 1, on behalf of Georgia Company 1, and Intermediary 1, on behalf of Intermediary Company 1, executed a "Brokerage Agreement." The Brokerage Agreement required Georgia Company 1 to pay Intermediary Company 1

9

approximately 25.4 percent of the proceeds Georgia Company 1 received from TASA under the First Uniform Contract. Based on documents produced by Georgia Company 1, approximately 5 percent of the fee was compensation that Intermediary 1's received for laundering the bribe proceeds.

29.     On or about November 9, 2015, Executive 3 emailed Foreign Official 1 at his TASA email address: "good morning can you please advise us what is the payment status on the three shipments?"  Foreign Official 1 responded (as translated from Spanish): "Due to issues of low collections of funds this week, it was impossible for us to pay the 1st invoice.  We are making arrangements so that in the last week of November payment is made for the first and second invoices."

30.     From July 31, 2015, through February 16, 2016, the Central Bank of Honduras made six payments to Georgia Company 1's bank account at U.S. Bank 1, an entity whose identity is known to the affiant, ending in 6772 (the "Georgia Company 1 Account 6772") totaling approximately $4,960,703.66.

31.     According to Executive 3, Foreign Official 1 told Executive 3 that Foreign Official 1 and **JUAN RAMON MOLINA RODRIGUEZ** were splitting 4% of the value of the First Uniform Contract.

32.     Executive 3 also told law enforcement that Executive 1 asked Intermediary 1 to send a phony invoice to Executive 1 in order to pay the Honduran government officials.  On or about January 13, 2016, Executive 1 emailed a series of invoices to Intermediary 1 and wrote that Georgia Company 1 "will be paying commissions" on the invoices.  Executive 1 asked Intermediary 1 to "prepare a commissions invoice for me based on these five invoices."  The five Georgia Company 1 invoices totaled approximately $3,108,863.72.

33.     Later that day, Intermediary 1 sent several Intermediary Company 1 invoices to Executive 1. The invoices totaled approximately $789,651.38, which was approximately 25.4 percent of the five invoices sent by Executive 1. On or about January 13 and 14, 2016, Georgia Company 1 sent Intermediary Company 1 two wire transfers totaling approximately $789,651.38.

34.     Georgia Company 1 also sent Intermediary Company 1 wire transfers of approximately $187,733.94 and $282,633.38, on February 25, 2016, and March 11, 2016, respectively. In total, between January 13, 2016, and March 11, 2016, Georgia Company 1 sent Intermediary Company 1 four wire transfers totaling approximately $1,260,018.70.

### THE SECOND UNIFORM CONTRACT

35.     On or about October 26, 2016, Executive 2, on behalf of Georgia Company 1, executed a second contract with TASA pursuant to which Georgia Company 1 agreed to provide the Honduran National Police with uniforms and accessories in return for over approximately $5.6 million (the "Second Uniform Contract"). **JUAN RAMON MOLINA RODRIGUEZ,** as a legal representative of TASA, signed the Second Uniform Contract on behalf of TASA.

36.     From November 28, 2016, through August 25, 2017, Georgia Company 1 received seven wires from the Central Bank of Honduras totaling approximately $5,695,774.74.

37.     Based on information provided by Georgia Company 1, on or about February 7, 2017, Intermediary 1 and Executive 1 executed a second "Brokerage Agreement" between Intermediary Company 1 and Georgia Company 1 (the "Second Brokerage Agreement"). The Second Brokerage Agreement was backdated to October 26, 2016, the date of the Second Uniform Contract. Under the Second Brokerage Agreement, the fee Georgia Company 1 agreed to pay to Intermediary Company 1 was reduced from 25.4% to 21%.

11

16

38.     Between February 9, 2017, and August 30, 2017, Georgia Company 1 sent to accounts controlled by Intermediary 1 six wire transfers totaling approximately $1,196,112.69, which is about 21 percent of the $5,695,774.74 paid by the Central Bank of Honduras to Georgia Company 1.

### INTERMEDIARY 1 PAID MOLINA
### APPROXIMATELY $114,000 TO AN OFFSHORE BANK ACCOUNT

39.     Bank records obtained from Belize show that **JUAN RAMON MOLINA RODRIGUEZ** controlled the Offshore Front Company 1 Account 1951. For example, the records produced by Belize for the Offshore Front Company 1 Account 1951 include a bank account application listing "Juan Ramon Molina Rodriguez" as an authorized user of the account and a picture of a passport for a Juan Ramon Molina Rodriguez. The records also include an email listing a "Juan R. Molina" with an email address that is also copied on communications between Georgia Company 1 employees and Foreign Official 1 regarding the First Uniform Contract.

40.     Based on bank records, Intermediary 1, using the proceeds of the Second Uniform Contract, sent three wire transfers totaling approximately $114,000 to the Offshore Front Company 1 Account 1951. Specifically:

    a.  On February 2, 2017, the Central Bank of Honduras transferred approximately $943,287.54 to Georgia Company 1 Account 6772. On February 9, 2017, Georgia Company 1 transferred approximately $198,090.38 to Intermediary Company 1's account held at another U.S. bank in the Southern District of Florida ("U.S. Bank 2," an entity whose identity is known to the affiant) ending 6447 (the "Intermediary Company 1 Account 6447"). On February 13, 2017, Intermediary Company 1 transferred approximately $157,824.19 from the Intermediary Company 1 Account 6447 to Intermediary Company 1's account at another U.S. bank in the Southern

12

Case 1:24-cr-20297-MD   Document 6   Entered on FLSD Docket 10/25/2023   Page 19 of 26
Case 1:23-asje-04t021-rfj-6205E7-ASEDA1-ED document 6 nfEntefitelo11GM19D23 DoEkagee1051812023   Page
15 of 18

District of Florida ("U.S. Bank 3," an entity whose identity is known to the affiant) ending 7803 (the "Intermediary Company 1 Account 7803"). On February 16, 2017, the Intermediary Company 1 Account 7803 transferred approximately $50,000 to the Offshore Front Company 1 Account 1951.

b. On March 27, 2017, the Central Bank of Honduras transferred approximately $1,253,638.21 to Georgia Company 1 Account 6772. On April 3, 2017, Georgia Company 1 transferred approximately $263,264.02 to the Intermediary Company 1 Account 7803. On April 10, 2017, the Intermediary Company 1 Account 7803 transferred approximately $50,000 to the Offshore Front Company 1 Account 1951.

c. On May 10, 2017, the Central Bank of Honduras transferred approximately $929,625.65 to Georgia Company 1 Account 6772. On May 12, 2017, Georgia Company 1 transferred approximately $195,221.39 to the Intermediary Company 1 Account 7803. On May 18, 2017, the Intermediary Company 1 Account 7803 transferred approximately $14,000 to the Offshore Front Company 1 Account 1951.

## THE 2019 CORRUPT BID

41.     In or around late 2019, a consortium of manufacturers, including Georgia Company 1, sought to bid on a large contract with TASA for the procurement of various goods. Georgia Company 1's portion of the contract was to be worth approximately $7.5 million.

42.     Based on recorded conversations,[2] on or about October 10, 2019, Executive 3 – prior to cooperating with law enforcement – spoke to **JUAN RAMON MOLINA RODRIGUEZ** and Foreign Official 1, as well as Executive 1 and Executive 2 to confirm the bribe to be paid for

---

[2] In May of 2021, law enforcement executed a search warrant at Executive 3's residence in connection with his arrest for his involvement in the Bolivian bribery and money laundering scheme, as noted above. Law enforcement recovered three digital audio recordings with metadata indicating the recordings were made on or about October 10, 2019.

the proposed contract. In the first recording, Executive 3, Executive 2, and Executive 1 discussed the bribery scheme for the 2019 contract by referring to a "waterfall" and "commission" on the proposed contract. Executive 3 said that he talked to "[Foreign Official 1] and, uh, **JUAN RAMON [MOLINA RODRIGUEZ]** was there . . . Yesterday, I talked to [Foreign Official 1] about, you know, the waterfall." Executive 3 referred to the "last time we did it was like 21 percent . . . but now it's lower, because we don't have to get the – the Miami [in reference to Intermediary 1], right?" Executive 3 explained that the bribes would total 20 percent and that, "Once we get the money here, then we start paying, right?" Toward the end of the first recording, Executive 3 told Executive 2 and Executive 1, "let me just call [Foreign Official 1] right now . . . ."

43.     In the second recording, Executive 3 told Executive 2, "I talked to [Foreign Official 1] . . . I explained to him, I says, 'once we get . . . once we get everything and we invoice, then we check and see if we can do something.'" Executive 2 responded, "I have no idea what you're talking about." Executive 2 told law enforcement he knew that the waterfall payments were facilitated through the company in Miami to officials in the government of Honduras.

44.     In the third recording, Executive 3 told Executive 1, "[Executive 2] was right. Uh, it's going to be covered in all that 20 [20 percent bribe] . . . So I just told them it's done – done. I said, 'You can assure – you can assure [another senior Honduran official] and everybody that we're on the same page with the waterfall and everything.'" Executive 1 responded, "Yep, yep."

45.     On or about November 6, 2019, Executive 2 emailed Georgia Company 1's approximately $7.5 million bid for the proposed contract to a consultant. The consultant's email signature block listed an address in Port Saint Lucie, Florida.

46.     Based on the foregoing, there is probable cause to believe that, from in or around March 2015, through at least in or around November 2019, Executive 1, Executive 2, Executive

14

Case 1:24-cr-20297-MD   Document 6   Entered on FLSD Docket 10/25/2023   Page 21 of 26
Case 1:23-mj-04022-JG SEAL Document 6 Entered on FLSD Docket 07/19/2023   Page
17 of 18

3, Employee 1, and Intermediary 1, all "domestic concerns" under the FCPA, willfully and corruptly made use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, and promise to make payments for the benefit of **JUAN RAMON MOLINA RODRIGUEZ** and Foreign Official 1 for the purpose of influencing **JUAN RAMON MOLINA RODRIGUEZ** and Foreign Official 1 to use their official capacities, securing an improper advantage and inducing **JUAN RAMON MOLINA RODRIGUEZ** and Foreign Official 1 to use their influence in order to assist Georgia Company 1, Executive 1, Executive 2, Executive 3, and Employee 1, in obtaining and retaining business for, and directing business to, Georgia Company 1, Executive 1, Executive 2, Executive 3, and Employee 1, and others, in violation of Title 15, United States Code, Section 78dd-2.

47.     Based on the foregoing, and based on my review of the Criminal Code of Honduras, there is also probable cause to believe that the bribery scheme conducted by Executive 1, Executive 2, Executive 3, Employee 1, Intermediary 1, **JUAN RAMON MOLINA RODRIGUEZ**, Foreign Official 1, and others, in which **JUAN RAMON MOLINA RODRIGUEZ** and Foreign Official 1 received bribes from Executive 1, Executive 2, Executive 3, Employee 1, Intermediary 1, and others, in exchange for, among other things, obtaining and retaining business from TASA, was an offense under, *inter alia*, Honduran law prohibiting bribery of a public official and public servant.

## CONCLUSION

48.     Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that:

•      From in or around March 2015, and continuing through in and around November 2019, in Miami-Dade County, and elsewhere, **JUAN RAMON MOLINA RODRIGUEZ**, did knowingly and willfully combine, conspire, confederate, and agree

15

with each other and with others to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place outside of the United States to and through a place in the United States, and from a place in the United States to and through a place outside of the United States with the intent to promote the carrying on of one or more specified unlawful activities, namely: (i) a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, pursuant to Title 18, United States Code, Section 1956(c)(7)(D); and (ii) an offense against a foreign nation involving bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, in violation of the Criminal Code of Honduras, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv). All in violation of Title 18, United States Code, Section 1956(h).

**FURTHER AFFIANT SAYETH NAUGHT.**

SCOTT MCNEIL
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time this 18th day of October 2023, in Miami, Florida.

HONORABLE EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

16

21

| CJA-23 (Rev 3/21) | **FINANCIAL AFFIDAVIT** |
|---|---|

IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE

| IN THE UNITED STATES | ☑ DISTRICT COURT | ☐ COURT OF APPEALS | ☐ OTHER *(Specify Below)* | |
|---|---|---|---|---|

IN THE CASE OF

FOR **Southern District of Texas**

| LOCATION NUMBER |
|---|

USA      V. _____

AT **Houston**

PERSON REPRESENTED *(Show your full name)*

**JUAN MOLINA-RODRIGUEZ**

1 ☑ Defendant - Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Supervised Release Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other *(Specify)* _____

**DOCKET NUMBERS**
Magistrate Judge _____
District Court _____
Court of Appeals _____

CHARGE/OFFENSE *(Describe if applicable & check box→)*    ☑ Felony    ☐ Misdemeanor

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

| INCOME & ASSETS | **EMPLOYMENT** | Do you have a job? ☑ Yes ☐ No<br>**IF YES,** how much do you earn per month? 10,000<br>Will you still have a job after this arrest? ☑ Yes ☐ No ☐ Unknown |
|---|---|---|

| | **PROPERTY** | Do you own any of the following, and if so, what is it worth? |
|---|---|---|

| | | | **APPROXIMATE VALUE** | **DESCRIPTION & AMOUNT OWED** |
|---|---|---|---|---|
| | | Home | $ 40000 | 100,000- home in Honduras |
| | | Car/Truck/Vehicle | $ 0 | |
| | | Boat | $ 0 | |
| | | Stocks/bonds | $ 0 | |
| | | Other property | $ | |

| | **CASH & BANK ACCOUNTS** | Do you have any cash, or money in savings or checking accounts? ☑ Yes ☐ No<br>**IF YES,** give the total approximate amount after monthly expenses   $ 260,000 |
|---|---|---|

| OBLIGATIONS, EXPENSES, & DEBTS | How many people do you financially support? 3 | | |
|---|---|---|---|
| | **BILLS & DEBTS** | **MONTHLY EXPENSE** | **TOTAL DEBT** |
| | Housing | $ 1000 | $ |
| | Groceries | $ 1000 | $ |
| | Medical expenses | $ 0 | $ |
| | Utilities | $ 0 | $ |
| | Credit cards | $ 0 | $ |
| | Car/Truck/Vehicle | $ 0 | $ |
| | Childcare | $ 0 | $ |
| | Child support | $ 0 | $ |
| | Insurance | $ 250/1000 | $ |
| | Loans | $ 0 | $ |
| | Fines | $ 0 | $ |
| | Other | $ 0 | $ |

I certify under penalty of perjury that the foregoing is true and correct.

10/19/2023

_____
SIGNATURE OF DEFENDANT
(OR PERSON SEEKING REPRESENTATION)

Date

CLOSED

## U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Houston)
## CRIMINAL DOCKET FOR CASE #: <u>4:23−mj−02017</u>−2 *SEALED*
### *Internal Use Only*

Case title: USA v. SEALED

Date Filed: 10/19/2023

Other court case number:  1:23−mj−4021 Southern District of
Florida, Miami

Date Terminated: 10/19/2023

Assigned to: Magistrate Judge
Christina A Bryan

**Defendant (2)**

**Juan Ramon Molina Rodriguez**
*TERMINATED: 10/19/2023*

represented by **Federal Public Defender − Houston**
440 Louisiana
Ste 310
Houston, TX 77002
713−718−4600
Fax: 713−718−4610
Email: hou_ecf@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

**Highest Offense Level
(Terminated)**

None

**Complaints**

Conspiracy to Commit Money
Laundering in violation of Title 18.

**Disposition**

1

United States Code. Section 1956(h).

**Plaintiff**

USA

| Date Filed | # | Docket Text |
|---|---|---|
| 10/19/2023 | 1 | Sealed Complaint from Southern District of Florida, Miami Division as to Juan Ramon Molina Rodriguez, filed.(GeorgeKelner, 4) (Entered: 10/19/2023) |
| 10/19/2023 | | Arrest (Rule 40) of Juan Ramon Molina Rodriguez, filed. (GeorgeKelner, 4) (Entered: 10/19/2023) |
| 10/19/2023 | 2 | Arrest Warrant issued 10/18/2023; Returned Executed on 10/18/2023 as to Juan Ramon Molina Rodriguez. Defendant was arrested in Houston, TX. Document restricted from PACER under privacy policy., filed. (GeorgeKelner, 4) (Entered: 10/19/2023) |
| 10/19/2023 | | ***Set/Reset Hearings as to Juan Ramon Molina Rodriguez: Initial Appearance – Rule 40 set for 10/19/2023 at 02:00 PM in Courtroom 701 before Magistrate Judge Christina A Bryan (GeorgeKelner, 4) (Entered: 10/19/2023) |
| 10/19/2023 | | Arrest of Juan Ramon Molina Rodriguez, filed. (MelissaMorgan, 4) (Entered: 10/19/2023) |
| 10/19/2023 | | INITIAL APPEARANCE IN RULE 5(c)(3) Minute Entry for proceedings held on 10/19/2023 before Magistrate Judge Christina A Bryan as to Juan Ramon Molina Rodriguez. Defendant first appearance on Complaint from the Florida Southern District Court 23–MJ–4021 and advised of rights/charges. Defendant requests appointed counsel, Financial affidavit executed, Defendant appeared with counsel. Order appointing FPD for limited purpose, Waiver of Identity, Preliminary, Detention Hearing in this district executed on the record, Defendant ordered removed to originating district,. Appearances: AUSA Jay Hileman for USA; AFPD Natalie Awad for Defendant.(ERO:Yes) (Interpreter: No) (Pretrial Officer: Tiffani Dabney) Defendant remanded to custody, filed. (MelissaMorgan, 4) (Entered: 10/19/2023) |
| 10/19/2023 | 3 | Sealed Financial Affidavit CJA 23 by Juan Ramon Molina Rodriguez, filed. (Entered: 10/19/2023) |
| 10/19/2023 | 4 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER FOR LIMITED PURPOSE. ( Signed by Magistrate Judge Christina A Bryan) Parties notified. (MelissaMorgan, 4) (Entered: 10/19/2023) |
| 10/19/2023 | 5 | BRADY ORDER on Rule 5(f) as to Juan Ramon Molina Rodriguez. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (MelissaMorgan, 4) (Entered: 10/19/2023) |
| 10/19/2023 | 6 | COMMITMENT TO ANOTHER DISTRICT as to Juan Ramon Molina Rodriguez. Defendant committed to the Florida Southern District Court. ( Signed by Magistrate Judge Christina A Bryan) Parties notified. (MelissaMorgan, 4) (Entered: 10/19/2023) |
| 10/19/2023 | | RULE 5 Papers sent via email to Florida Southern District Court Miami Division as to Juan Ramon Molina Rodriguez, filed.(MelissaMorgan, 4) (Entered: 10/19/2023) |

| 10/19/2023 | 7 | Pretrial Services Report (Sealed) as to Juan Ramon Molina Rodriguez, filed. (Entered: 10/19/2023) |
|------------|---|---------------------------------------------------------------------------------------------------|